* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Griffin. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Griffin with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On September 2, 1992, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. On September 2, 1992, the plaintiff contracted compensable Post Traumatic Stress Disorder ("PTSD"). Plaintiff's PTSD subsequently caused and/or materially aggravated plaintiff's diabetic condition, rendering plaintiff's diabetic condition a compensable component of the subject claim.
5. On September 2, 1992, defendant-employer was self-insured for workers' compensation risk. Key Risk Management Services, Inc., currently serves as its self-insured administrator.
6. Plaintiff's average weekly wage is $440.44.
7. At the hearing before the deputy commissioner, the parties submitted stipulated exhibits consisting of:
 1) Plaintiff's medical records;
 2) Industrial Commission forms, filings, and decisions;
 3) All discovery and employment documents;
 4) Bills, receipts, statements and other documents regarding plaintiff's medical expenses;
 5) All prior deposition transcripts. *Page 3 
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed in a stressful position as a Probation 
Parole officer by the North Carolina Department of Correction. In 1992, defendant-employer brought a disciplinary hearing against plaintiff regarding his conduct during a work-related trip to Washington, D.C. Plaintiff felt the allegations made against him were false.
2. Subsequently, plaintiff began having more difficulty controlling his diabetic condition, and at the request of his treating endocrinologist at the time, Dr. Charles Johnson, sought treatment with Duke Medical Center psychiatrist, Dr. Daniel Gianturco. Dr. Gianturco diagnosed plaintiff with a dysthmic disorder, characterized by a depressive state complicated by high levels of stress.
3. Dr. Gianturco and Dr. Johnson agreed that the stress endured by plaintiff at work interfered with the control of his diabetes and they took plaintiff out of work indefinitely. In clinic visit notes dated December 1, 1992 and December 7, 1992, Dr. Gianturco noted that plaintiff was not following through with his treatment regimen because of his preoccupation with the disciplinary actions being taken against him at work. On January 5, 1993, plaintiff was discharged from his position with defendant-employer.
4. The stress encountered by plaintiff in the execution of his job duties and subsequent disciplinary proceedings were major contribution factors in the development of his dysthmic disorder. In a decision filed on December 21, 2004, the North Carolina Court of Appeals affirmed the Full Commission's July 10, 2003 Opinion and Award confirming that *Page 4 
plaintiff's diabetic condition and periodontal disease were compensable components of plaintiff's original compensable occupational disease.
5. The Full Commission awarded plaintiff medical compensation at the Duke Diet and Fitness Center and "related programs." Despite the Full Commission's July 10, 2003 Opinion and Award and plaintiff's regular requests through counsel, defendant continued to refuse to authorize treatment with some providers for treatment clearly related to plaintiff's diabetic and periodontal conditions, including treatment at the Duke Diet and Fitness Program and other "related programs." Defendant also failed to reimburse plaintiff for out-of-pocket expenses and pay outstanding medical balances that involved treatment related to his diabetic and periodontal condition.
6. Dr. Giduz, plaintiff's treating psychiatrist testified, and the undersigned find that plaintiff's condition is no longer classified as PTSD because plaintiff has made improvements in his mental condition. However, the anxiety disorder caused by the work-related stress is still present, although in a slightly different form. Dr. Giduz testified that the changes are to be expected following a decade of treatment. Dr. Giduz remained of the opinion, and the undersigned find, that plaintiff still suffers symptoms as the result of his compensable occupational disease.
7. Dr. Spratt, plaintiff's treating endocrinologist, testified and the undersigned find, that plaintiff's diabetic condition remains aggravated by his compensable occupational disease, and the aggravation suffered by plaintiff will never be reversed.
8. Dr. Donatucci, plaintiff's treating urologist, testified and the undersigned find, that plaintiff's urological problems were either caused by or aggravated by plaintiff's diabetes. Dr. Donatucci indicated that plaintiff suffers from diabetic neuropathy as a result of his *Page 5 
compensable diabetic condition. Dr. Donatucci further testified that plaintiff's symptoms are likely permanent and progressive.
9. Dr. Lehrich, plaintiff's treating nephrologist, testified and the undersigned find that plaintiff suffers stage IV kidney disease as a result of his diabetes and will require further treatment in the future, possibly including dialysis.
10. Dr. Kraus, plaintiff's treating cardiologist, testified and the undersigned find that plaintiff has chronic coronary artery disease, which was accelerated as a result of his diabetes. Dr. Kraus further testified that diabetes leads to plaque formation, accumulation of lipids or fat in plagues, renal dysfunction, hypertension and high cholesterol.
11. Plaintiff's treating ophthalmologist and podiatrist submitted written statements that plaintiff's glaucoma and podiatry conditions are related to his diabetes.
12. Plaintiff's treating physicians have testified that plaintiff is in need of intensive treatment programs to achieve weight loss and keep plaintiff's diabetic condition under control, and the undersigned find the same as fact. The greater weight of the evidence of record, demonstrates that plaintiff has had success with the programs prescribed, in particular the Rice Diet Program.
13. The greater weight of the competent medical evidence shows that plaintiff's compensable diabetic condition either caused, materially aggravated, or significantly contributed to the development of plaintiff's current urologic, kidney, neuropathy, podiatry, cardiovascular, hypertension, cholesterol, and glaucomic condition, and resulting disability.
14. As a result of the development of his compensable medical conditions, plaintiff has required medical care and treatment, medicines, sick travel, and diagnostic studies. The medical care obtained by plaintiff through the date of the decision for his original compensable *Page 6 
occupational disease, periodontal disease, severe diabetic condition, and all other medical conditions that have been caused, or materially aggravated by such diabetic condition, to include, but not limited to his urologic, kidney, neuropathy, cardiovascular, hypertension, cholesterol, podiatry, and glaucomic conditions, was reasonably required to effect a cure, give relief or lessen plaintiff's disability.
15. Plaintiff's symptoms are likely permanent and chronic. There is no cure for his conditions. Future medical and psychiatric care and treatment will be required as a result of plaintiff's compensable injuries. Plaintiff will continue to need medical monitoring and treatment to address these problems.
16. Plaintiff will require additional future medical compensation for his original compensable occupational disease. He will also require additional future medical compensation for his severe diabetic condition, and all other medical conditions that have been a direct and natural consequence of his compensable diabetic condition, which were caused, or materially aggravated by such condition. This includes his urologic, kidney, neuropathy, cardiovascular, hypertension, cholesterol, podiatry, and glaucoma conditions.
17. Future additional medical care at the Duke Diet and Fitness Center, Rice Diet Program or the Duke Living Center are specifically included, as long-term access to such treatment facilities, as directed by his treating physicians, will operate to mitigate the effects of his compensable diabetic condition and the diseases secondary to the same. Dr. Kraus testified and the undersigned find that all three of the programs have been beneficial to plaintiff, but that they have been sequential and that there is no benefit of participating in more than one program at the same time. As Dr. Spratt currently manages plaintiff's care, she is in the best position to decide which, if any, of these programs will be of benefit to plaintiff in the future. *Page 7 
18. Based upon the complex issues involved, the undersigned find that defendants defended this action with reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Our courts have long approved causal connections between an initial injury and its direct and natural consequences and have held that injured workers are entitled to be compensated for all disability caused by and resulting from a compensable injury. Horne v. Universal LeafTobacco Processors, 119 N.C. App. 682, 459 S.E.2d 797, disc. rev.denied 342 N.C. 192, 403 S.E.2d 237 (1995).
2. Since plaintiff's urologic, kidney, neuropathy, cardiovascular, podiatry, hypertension, cholesterol, and glaucomic conditions were caused or aggravated by his diabetic condition, which has been found to have been caused by or aggravated by plaintiff's original compensable injury, defendants shall provide medical treatment as may be reasonably required to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25, 97-25.1.
3. Defendants are responsible for payment of all medical treatment previously rendered in connection with treatment of plaintiff's urologic, kidney, neuropathy, cardiovascular, podiatry, hypertension, cholesterol, and glaucomic conditions. Plaintiff's current physicians for each condition are designated as an authorized treating physician in this claim, including Drs. Giduz, Lehrich, Spratt, Kraus, and Donatucci. N.C. Gen. Stat. § 97-25; Little v. Penn Ventilator *Page 8 Co., 317 N.C. 206, 345 S.E.2d 204 (1986); Forest v. Pitt County Bd. ofEduc., 100 N.C. App. 119, 394 S.E.2d 659 (1990); Schofield v. TeaCo., 299 N.C. 582, 264 S.E.2d 56 (1980).
4. Defendant is responsible for payment of all future medical treatment rendered in connection with plaintiff's original mental health, periodontal, diabetic, urologic, kidney, neuropathy, podiatry, cardiovascular, hypertension, cholesterol, and glaucomic conditions. N.C. Gen. Stat. § 97-25; Little v. Penn Ventilator Co., 317 N.C. 206,345 S.E.2d 204 (1986)
5. Defendant is responsible for payment to plaintiff of all out-of-pocket medical expenses and outstanding medical balances generated in connection with treatment of plaintiff's mental health, periodontal, diabetic, urologic, kidney, neuropathy, podiatry, cardiovascular, hypertension, cholesterol, and glaucomic conditions. N.C. Gen. Stat. § 97-25.
6. Defendants have defended this action with reasonable grounds and should not be sanctioned pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall continue to pay for medical treatment associated with plaintiff's compensable mental health, periodontal, diabetic, urologic, kidney, neuropathy, podiatry, cardiovascular, hypertension, cholesterol, and glaucomic conditions, including future medical treatment.
2. Defendant shall reimburse plaintiff for all out-of-pocket medical expenses incurred in connection with treatment of plaintiff's compensable medical conditions and provide an accounting of the same to the Commission. *Page 9 
3. Defendant shall pay for plaintiff's prior medical treatment at the Duke Diet and Fitness Center, Rice Diet Program and Duke Living Center. Defendants shall pay for further treatment as directed by plaintiff's coordinating physician, Dr. Spratt.
4. Defendant shall reimburse plaintiff's health insurance providers, including Medicare, for all past medical, psychological, and other care and treatment provided for plaintiff's compensable conditions.
5. Defendant shall also pay directly to all health care providers and all health insurance companies an additional ten percent (10%) late payment penalty for all such above noted payments which are more than sixty (60) days overdue at the time payment is finally rendered, pursuant to the provisions of N.C. Industrial Commission Rule 407(2).
6. Defendants shall pay the costs due the Commission.
This the 17th day of December, 2007.
S/______________________ DANNY LEE McDONALD COMMISSIONER
 CONCURRING: S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________________ DIANNE C. SELLERS COMMISSIONER *Page 1